AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of California

<table>
<tr><td>In the Matter of the Search of</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Information associated with Facebook user ID</td><td>)</td></tr>
<tr><td>100011985227160 that is stored at premises</td><td>)</td></tr>
<tr><td>controlled by Facebook</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**

**Feb 24, 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Case No.    2:21-sw-0126 DB

# SEALED

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENTS B and C, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | Prohibited person in possession of a firearm |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice ___30___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/Brian Collins
*Applicant's signature*

Brian Collins, Task Force Officer
*Printed name and title*

Sworn to and signed telephonically, pursuant to Federal Rule of Criminal Procedure 4.1.

Date:    February 24, 2021

City and state:   Sacramento, California

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Brian Collins, being first duly sworn, hereby depose and state as follows:

### I.        INTRODUCTION AND AGENT BACKGROUND

1.        I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user identification number that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user identification number 100011985227160.

2.        I am an undercover Detective with the Vacaville Police Department.  I have been a sworn peace officer with the City of Vacaville since May 2015.  I am currently assigned to the Vice Team and have been since October 2017, and I served with the Patrol Division for two-and-a-half years before that.  Prior to joining the Vacaville Police Department, I served with the Benicia Police Department for four years, and with the Hercules Police Department for two years.

3.        In August 2019, I was cross-designated as a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), Sacramento Division, Fairfield Resident Agency.  In this role, I am responsible for investigating firearms, narcotics, and gang-related activity in Solano County as a member of the Solano County Violent Crime Task Force.  I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

4.        I have received thousands of hours of formal training with the Vacaville, Benicia, and Hercules Police Departments.  This includes over 1,000 hours of training at the P.O.S.T.

Basic Police Academy, as well as multiple other training courses in specialized areas of law enforcement such as interviews and interrogations, intelligence gathering, and others.  In addition to my formal training, I have been involved in hundreds of narcotics cases and investigated a litany of other crimes, including homicides, felony assaults, robberies, burglaries, thefts, forgeries, sexual assaults, weapons violations, and missing persons.  In my career in law enforcement, I have participated in all aspects of criminal investigation, including physical and electronic surveillance, search warrant execution, gathering GPS data and installing tracking devices, interviews, and arrests.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## II.     FACTS ESTABLISHING PROBABLE CAUSE

6.     On May 22, 2018, David Anthony McDaniels was arrested by officers of the Vacaville Police Department.  Officers arrested McDaniels after he was found in a motel room in which officers located a firearm hidden in an air conditioning vent.[1]

7.     Two individuals named Lamar Hall and Sara Sauerwein were also in the hotel room when McDaniels was arrested on May 22, 2018.  The facts and circumstances leading to McDaniels's arrest are set forth in the affidavit of TFO Gregory R. Ramos, which was submitted in support of an application for search warrant number 2:19-sw-00546-AC.  The facts set forth in TFO Ramos's affidavit are incorporated herein by reference, and search warrant number 2:19-sw-00546-AC is attached.

8.     Search warrant number 2:19-sw-00546-AC authorized law enforcement agents to extract data from two mobile cellular devices seized at the scene of McDaniels's arrest, at least

---

[1] McDaniels is the defendant in a criminal case filed in the United States District Court for the Eastern District of California captioned *United States v. McDaniels*, No. 2:18-cr-00170-JAM.  McDaniels is charged in that case with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

one of which belonged to a female associate of McDaniels named Anjelika Riggins.  Law

enforcement agents executed the warrant in 2019 and extracted data from both mobile cellular

devices listed on Attachment A to that warrant.  I viewed a summary of this extracted data,

which revealed to me that McDaniels and Riggins used Facebook Messenger to communicate

with one another in the days leading up to McDaniels's arrest.[2]

> **A.      On May 20, 2018, McDaniels and Riggins Discussed Obtaining a Firearm for McDaniels.**

9.      On or around May 20, 2018, beginning at approximately 11:20 p.m., McDaniels

and Riggins engaged in the following exchange on Facebook Messenger:

| | |
|---|---|
| *McDaniels:* | I need 450 for a hamma for real so what I got to do[3] |
| *Riggins:* | Ill see wassup |
| *McDaniels:* | Ugh |
| | Ima make it happen |
| *Riggins:* | What you about to get into |
| | ? |
| | So what u about to do |
| | ??? |

> **B.      On May 22, 2018, Riggins Took Steps to Obtain a Firearm While Communicating With Hall and McDaniels.**

10.      On or around May 22, 2018, beginning at approximately 11:20 a.m. and

concluding at approximately 12:22 p.m., Riggins and an individual associated with the moniker

"Booshie Boo" engaged in the following exchange on Facebook Messenger:

| | |
|---|---|
| *Booshie Boo:* | Wer u at |

---

[2] As set forth in TFO Ramos's affidavit in support of search warrant number 2:19-sw-00546-AC, officers who arrested McDaniels on May 22, 2018, viewed Facebook Messenger messages on Riggins's device on that date in which Riggins and McDaniels discussed his desire to obtain a firearm.

[3] In my training and experience, I know that "hamma" is a slang term frequently used to refer to a firearm.

| | |
|---|---|
| *Riggins:* | Vaca |
| *Booshie Boo:* | Drivin through Vaca |
| | Who you wit |
| | Or about to be |
| *Riggins:* | My nigga |
| *Booshie Boo:* | Wer yall at |
| *Riggins:* | Not bj btw[4] |
| | Lol |
| *Booshie Boo:* | Haha wer u at |
| *Riggins:* | The 6 |
| *Booshie Boo:* | I can slide |
| *Riggins:* | Ummmmm im just waking up |
| | But i d c |
| | Who with you |
| *Booshie Boo:* | Me n da Asian bitch I'm still injured but I miss you. Is it good |
| *Riggins:* | Come |
| *Booshie Boo:* | Which one |
| *Riggins:* | Orange dr |
| *Booshie Boo:* | Yup yup |
| *Riggins:* | Give me like a hour though I gotta go pick up this gun |
| *Booshie Boo:* | Dont write dat n in almost ther make it wait |
| *Riggins:* | I can't cause they coming outta town |

11.     At approximately 12:13 p.m., Riggins sent a Facebook Messenger message to an individual with the moniker "Mac Marski" and the assigned Facebook user identification number 10001198527160.[5]  This message sent by Riggins to Hall asked, "You got the thang ?"

---

[4] Based on my review of other messages extracted from Riggins's cellular telephone, I believe that "bj" refers to Riggins's ex-boyfriend.

[5] Based on my years of experience as a law enforcement officer in the Vacaville area,

12.     Nine seconds later, Riggins attempted to place an audio call to McDaniels.  Then at approximately 12:53 p.m., Riggins attempted to place an audio call to Hall.

13.     Beginning at approximately 1:00 p.m. and concluding at approximately 1:13 p.m., Riggins sent a series of Facebook Messenger messages to Hall containing the following:

| | |
|---|---|
| *Riggins:* | What room im coming |
| | In my car hes in his |
| | Come outside in 5 minutes I'm getting off the exit now |

14.     At approximately 1:19 p.m., Hall placed an audio call to Riggins using Facebook Messenger that lasted for eighteen seconds.

15.     At approximately 1:24 p.m., McDaniels sent Riggins the following messages on Facebook Messenger:

| | |
|---|---|
| *McDaniels:* | You get it |
| | Im in Fairfield |

16.     At approximately 1:27 p.m., McDaniels placed an audio call to Riggins using Facebook Messenger that lasted for twenty seconds.  Following this call, beginning at approximately 1:48 p.m. and concluding at approximately 2:12 p.m., McDaniels and Riggins engaged in the following exchange on Facebook Messenger:

| | |
|---|---|
| *McDaniels:* | Bra wtf |
| | If this was a test to see if you was gone change and act different for ne an show me you understand me would you pass |
| *Riggins:* | He's bring it |
| *McDaniels:* | Am i the one |
| *Riggins:* | To vaca |
| | Im leaving cordiela |

---

including numerous contacts with Lamar Hall, I know that Hall's nickname is "Marski." Accordingly, I believe that Hall is the individual associated with the moniker "Mac Marski" on Facebook.

| | |
|---|---|
| *McDaniels:* | Bitch why |
| | This that fuck shit cant never get shit right |
| | You see what i mean |
| | I thought me talking to u real will have u move a lil better for me |
| *Riggins:* | Blood you can't be mad at me because the Knigge had it in Fairfield the whole fucking time I asked you this |
| | So I'm coming back this is the Knigge don't have it what the fuck am I doing wrong |
| *McDaniels:* | Yep |
| *Riggins:* | Yep |
| | What |
| | ??? |
| *McDaniels:* | Ok |

17.     Beginning at approximately 2:52 p.m., Riggins sent the following messages to Hall using Facebook Messenger:

| | |
|---|---|
| *Riggins:* | How long til u pick up |
| | And bring herr |
| | Here |

18.     At approximately 7:05 p.m., Hall placed an audio call to Riggins using Facebook Messenger.  Riggins did not answer.

C.     **Riggins, McDaniels, and Hall Were Arrested Near Riggins's Motel Room During the Early Evening of May 22, 2018.**

19.     Vacaville Police Department officers conducted a traffic stop of Riggins on May 22, 2018, at approximately 7:06 p.m., after observing her drive an unregistered vehicle.  While officers engaged with Riggins following this initial traffic stop, they observed Hall's vehicle enter the parking lot of the Motel 6 where Riggins told officers she was staying.

20.     At approximately 7:21 p.m., the same Vacaville Police Department officers who were involved in Riggins's traffic stop entered Riggins's motel room and detained McDaniels,

Hall, and Sauerwein.  Officers subsequently located a firearm in the air conditioning vent of Riggins's motel room.

21.     Officers arrested McDaniels, Hall, and Riggins.  Officers transported McDaniels and Riggins to the Vacaville Police Department in the same police transport van.  Officers wrote the following in their report of their encounter with McDaniels, Hall, and Riggins:  "When I arrived at the Vacaville Police Department both S-McDaniels and S-Riggins were pleading that they did not know about the firearm, and that S-Hall brought the firearm to sell to them."

22.     In 2020, subsequent to execution by law enforcement of search warrant number 2:19-sw-00546-AC, the government analyzed DNA obtained from the firearm recovered from the air conditioning vent of Riggins's motel room.  The government's DNA analysis appeared to exclude McDaniels's DNA from being present on the firearm.  The government's DNA analysis appeared to neither exclude nor confirm the presence of Hall's DNA on the firearm.

23.     The government decided to seek the search warrant for which I am applying after it received the results of the DNA analysis described in the preceding paragraph.

**D.     Facts Regarding Facebook.**

24.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

25.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

26.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group

identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

27.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

28.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

29.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link

to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

30.      Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

31.      If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32.      Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

33.      Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34.      Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35.      Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

36.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37.     Facebook also retains Internet Protocol ("IP") logs for a given user identification number ("ID") or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

38.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

39.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and

tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (for example, information indicating a plan to commit a crime), or consciousness of guilt (for example, deleting account information in an effort to conceal evidence from law enforcement).

      40.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**III.     INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

      41.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## IV.  CONCLUSION AND REQUEST FOR SEALING

42.    Based on the foregoing, I request that the Court issue the proposed search warrant.

43.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

44.    I further request that the Court order that all papers in support of this application, including the affidavit, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation the scope of which is not known to its target.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation by providing the target and his confederates the opportunity to delete relevant evidence before it is seized.

Respectfully submitted,

/s/Brian Collins
Brian Collins
Task Force Officer
Solano County Violent Crime Task Force

Subscribed and sworn to telephonically on:        February 24, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/s/ SAM STEFANKI
Approved as to form by AUSA SAM STEFANKI

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100011985227160 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from May 1, 2018, to May 31, 2018;

c)      All photographs and videos uploaded by that user ID and all photographs and videos uploaded by any user that have that user tagged in them from May 1, 2018, to May 31, 2018, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photographs and videos;

d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e)      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f)      All other records and contents of communications and messages made or received by the user from May 1, 2018, to May 31, 2018, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

g)      All "check ins" and other location information;

h)      All IP logs, including all records of the IP addresses that logged into the account;

i)      All past and present lists of friends created by the account;

j)      All records of Facebook searches performed by the account from May 1, 2018, to May 31, 2018;

k)      All information about the user's access and use of Facebook Marketplace;

l)      The types of service utilized by the user;

m)      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

n)      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

o)      All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within fourteen days of issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 922(g) involving David Anthony McDaniels, Anjelika Riggins, Lamar Hall, or Sara Sauerwein since May 1, 2018, including, for each user ID identified on Attachment A, information pertaining to the following matters:

a)      The purchase, sale, or transportation of any firearm;

b)      Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c)      Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d)      The identity of the person(s) who created or used the user ID.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, law enforcement may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT C**

AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

JUN 17 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of: | ) |
| | ) |
| Three electronic devices processed into evidence in | ) |
| connection with Vacaville Police Department, Case | ) |
| No. 18-4246, as further described in Attachment A. | ) |
| | ) |

Case No. **2:19 - SW - 0 5 4 6   AC**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |
| 18 U.S.C. § 1029 | Fraud and related activity in connection with access devices |

The application is based on these facts:

**See Affidavit of FBI Task Force Officer Gregory R. Ramos, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of ___30___ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gregory R. Ramos, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____June 17, 2019_____

_____
*Judge's signature*

City and state: _____Sacramento, California_____

Hon. Allison Claire, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH ELECTRONIC DEVICES

I, Gregory R. Ramos, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.   I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property (i.e., the electronic devices further described in Attachment A) which is currently in law enforcement possession, and the extraction from that property of the electronically stored information (i.e., the data and information further described in Attachment B).

2.   I am an Officer with the California Highway Patrol, and have been so employed for over 13 years. In April 2018, I was cross-designated as a Task Force Officer with the Federal Bureau of Investigation, Sacramento Division, Fairfield Resident Agency. In this role, I am responsible for investigating violent crimes and gang-related activity in Solano County as a member of the FBI's Solano County Violent Crime Task Force.

3.   Prior to beginning active service as a CHP Officer, I attended the CHP Academy, which is a six-month training program with coursework in California criminal law and the California vehicle code, investigating traffic collisions, crimes against persons and property, and public safety, among other areas. Since that time, I have participated in formal training courses that included Interview and Interrogation, Crime Scene Investigations, and Gang Investigations, among others. I have earned, Basic, Intermediate, and Advanced Certificates from P.O.S.T.

4.   In addition to my classroom training, I have conducted criminal investigations in areas that include vehicular homicide, fatal hit and run collisions, assault, burglary, auto burglary, vehicle theft, illegal firearms possession, identity theft, and various other crimes. I have arrested and interviewed suspects, and interviewed victims and witnesses. During these investigations, I frequently worked with experienced local, state and federal law enforcement officers. In addition to my classroom training, this practical experience has formed the basis of my opinions set forth below.

5.   As a result of my training and experience as a CHP Officer and an FBI Task Force Officer, I am familiar with the state and federal laws pertaining to firearms. I know that it is unlawful under Title 18 (of the United States Code) for a convicted felon to possess a firearm or ammunition.

///

1

6.      The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel, and my own personal knowledge.

7.      Since this affidavit is intended to show only that there is sufficient probable cause for the requested warrant, it does not detail all of my knowledge about this investigation; only that which I believe to be pertinent to the authority requested to search the electronic devices described below.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      This Affidavit seeks authorization to search two cellular telephones and one SIM card that were found in a purse belonging to Anjelika Sherra Riggins, who was arrested along with defendant David MCDANIELS on May 22, 2018.  MCDANIELS is the sole defendant in *United States v. David Anthony McDaniels*, 2:18-cr-0170-JAM (E.D. Cal.), which charges MCDANIELS with violating 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

9.      Riggins' purse was booked into evidence on May 23, 2018, in connection with Vacaville Police Department, Case No. 18-4246.  The cell phones and SIM card were discovered during a recent inspection of the physical evidence gathered in this case.  The cell phones and SIM card are described below:

        a.      A silver IPhone with a black case, Model # A1549, and IMEI number: 352013078378723.  This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13A.

        b.      A silver and black Moto cell phone with a pink case.  This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B.

        c.      A white SIM card located between the pink case and silver and black Moto cell phone entered into evidence as item #13-B.  This SIM card was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B-1.

10.     Both cell phones and the SIM card are currently in law enforcement's custody in Vacaville, California.

11.     The applied-for warrant would authorize the forensic examination of both cell phones and the SIM card to identify electronically-stored data, particularly described in Attachment B.

2

## PROBABLE CAUSE

12.     On May 22, 2018, Vacaville (CA) Police Officer Cole Spencer conducted a traffic stop on
a vehicle for expired registration, a violation of California Vehicle Code 4000(a)(1). The
driver stopped in a Motel 6 parking lot in Vacaville. Officer Spencer identified the driver
as Anjelika Riggins. Police dispatch advised that Riggins was unlicensed and on Solano
County Probation for possession of stolen property with a "search clause" (any authorized
law enforcement officer could search Riggins and property under her control without
needing probable cause or reasonable suspicion for the search beforehand). When asked,
Riggins told Officer Spencer that she was staying in Room 129 at the Motel 6 nearby.
Vacaville Police Officer Criste arrived at the scene to help Officer Spencer search Riggins
and her car. During the searches that followed, the officers found numerous ID cards, debit
cards, and credit cards, all of which were issued in different names, inside Riggins' purse
and wallet. The items located were consistent with identity theft, which was a violation of
Riggins' probation terms (California Penal Code, Sections 530.5(c)(3) 1203.2). Officer
Spencer also found a Motel 6 room key in Riggins purse.

13.     Afterwards, Officer Spencer read Riggins her Miranda rights. She acknowledged that she
understood her rights and agreed to talk further. When Officer Spencer asked about the
numerous credit cards and identification cards he found in her purse, Riggins said that she
used the cards to buy food and cigarettes, and that she bought the cards on the streets in the
Bay Area.

14.     Additional police officers arrived on scene to help with the probation search of Riggins'
motel room, to include Officer Boehm, Officer Gunderson, and Officer Criste. The officers
searched Room 129 using the Motel 6 key card found in Riggins' purse. When the officers
entered the room, several people were inside. They were later identified as David Anthony
MCDANIELS, Lamar Hall, and Sara Sauerwein. When the officers searched the room,
they found multiple items of third-party identifying information consistent with identity
theft. In addition, the officers found a Ruger LC9 9mm pistol in an air vent, both of which
(the gun and the air vent) were wet when the officers searched/found them. The officers
determined that the gun had been possessed by MCDANIELS. This was based on the fact
that MCDANIELS' hands were soaking wet when they interviewed him (and the room's
other two occupants—Lamar Hall and Sara Sauerwein—hands' were dry), and based on
the fact that Hall and Sauerwein had described seeing MCDANIELS put the gun in the vent
when the officers knocked on the door and announced their presence. In addition, the
officers learned that MCDANIELS was wanted for an outstanding felony arrest warrant
issued out of Solano County. Based on this information, as well as the firearm confiscated
from the Motel 6 room, MCDANIELS was arrested.

3

15.     MCDANIELS and Riggins were taken to the Vacaville Police Department.  Both denied knowing about the firearm and said that Lamar Hall brought it to the motel room to sell them.  Riggins gave Officer Spencer the password to her IPhone, and she insisted that he read her Facebook Messenger conversation with Lamar Hall, in which they allegedly discussed the gun.  Officer Spencer was unable to find any discussion about a gun, or selling a gun between Riggins and Hall.  He did, however, look through the Facebook Messenger conversation between Riggins and MCDANIELS from May 20, 2018, and found a statement from MCDANIELS saying, "I need 450 for a hamma for real so what I got to do."  Officer Spencer noted that the conversation did not discuss Lamar Hall owning the firearm, and that, in his view, this message suggested that MCDANIELS wanted to purchase a firearm prior to the date of his arrest.

16.     The photo below shows the text message exchange between Riggins and MCDANIELS from Riggins' iPhone:



This screenshot was captured by Officer Spencer.  Riggins' iPhone was booked as evidence item 13A.  Based on my training and experience I know that "hamma" is a slang term for a firearm.

4

17.   On August 14, 2018, Task Force Officer Coy Caulfield swore out a criminal complaint in
      *United States v. David Anthony McDaniels*, 2:18-MJ-0154-EFB (E.D. Cal.). Magistrate
      Judge Brennan issued an arrest warrant for David MCDANIELS for the violation of 18
      U.S.C. 922(g)(1) [felon in possession of a firearm] at the same time.

18.   On August 30, 2018, a federal grand jury in the Eastern District of California returned a
      one-count indictment against MCDANIELS, charging him with violations of 18 U.S.C. §§
      922(g)(1) and 924(e)(1). *United States v. David Anthony McDaniels*, 2:18-cr-0170-JAM
      (E.D. Cal.).

19.   On May 17, 2019, Assistant Federal Defender Mia T. Crager, a defense investigator with
      the Federal Defender's Office, Assistant U.S. Attorney Timothy H. Delgado, Task Force
      Officer Mike Miller, and an evidence technician with the Vacaville Police Department
      conducted a review of all evidence that was booked for Vacaville PD Case # 18-4246.
      Inside the purse that was booked as item #13 (Riggins' purse), an IPhone cellular telephone
      and a Moto cellular telephone were located. A SIM card was also found between the Moto
      cellular telephone and its protective case. These three items were booked individually as
      item #13A for the IPhone cellular telephone, item #13-B for the Moto cellular telephone,
      and item #13-B-1 for the SIM card.

20.   Based on my training and experience, and from what I have learned by consulting other
      agents, I know that mobile telephones and/or SIM cards:
      - preserve in their memory a history of incoming, outgoing, and missed calls;
      - contain in their memory a telephone book, which allows the user to store numbers
        and other contact information;
      - contain in their memory text messages sent, received, and drafted by the user;
      - have a voicemail function that allows callers to leave messages when the user does
        not answer;
      - contain other user-entered files such as "to-do" lists, which can provide evidence of
        a crime;
      - contain photographic data files, which can be evidence of criminal activity when the
        user took pictures of evidence of crime.

21.   In addition to these functions, I also know that SIM cards are "smart cards" inside mobile
      telephones, carrying unique identification numbers, which are capable of storing personal
      data and preventing operation if removed.

22.   Mobile telephone companies also store the data described in the above-paragraphs on their
      own servers and associate the data with particular users' mobile telephones. In addition, all

of these functions are can be found on a "smart" phone or similar handheld device (such as the devices in Attachment A), as well as evidence of email communications.

23.     Because there is probable cause to believe that MCDANIELS possessed the firearm seized on May 22, 2018 in violation of 18 U.S.C. §§ 922(g)(1), and because Officer Spencer found what appeared to be a Facebook Messenger text exchange between Riggins and MCDANIELS from May 20, in which the two of them apparently discussed selling a firearm, I submit there is also probable cause to believe that information and records relating to his possessing the firearm will be found stored on the silver iPhone confiscated from Riggins' purse on May 22, 2018 (i.e., Evidence item #13A). I also submit that there is probable cause to believe that information and records relating to Riggins' potential violations of 18 U.S.C. § 1029 (fraud and related activity in connection with access devices), will be found on all three devices described in Attachment A, and in particular, will contain evidence of the type described in Attachment B.

24.     Based on my training and experience as an FBI TFO and a California Highway Patrol Investigator, I know that individuals who illegally possess firearms often take pictures of them with their phones and store them in their phones and are therefore likely to share images of such weapons with others. They also commonly have text messages and other communications in their phones regarding such weapons. I have been involved in several investigations where this was also the case for access device fraud. I believe the cellular telephones and SIM card located in Riggins' purse are likely to have evidence proving MCDANIELS' illegal possession of the firearm seized in this case, as well as Riggins' fraudulent use of access devices.

25.     The devices listed in Attachment A are currently maintained at the Vacaville Police Department in Vacaville, California, and have been in law enforcement's custody since they were seized on May 22, 2019. Based on my training and experience, I know the devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into law enforcement's possession.

## TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

27.     Wireless telephone: A wireless telephone (or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually

6

contains a "call log," which records the telephone number, date, and time of all calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading form the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

28.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and using computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDSs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

29.    Based on my training, experience, and research, I know that the devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, internet access device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who they communicated with, and the content of those communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31.    Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

7

32.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

33.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution"' evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

34.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

35.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36.     Nature of examination.  Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37.     Manner of execution.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

## CONCLUSION

38.     Based on the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the forensic examination of the devices described in Attachment A, to seek the items described in Attachment B.

39.     I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Gregory R. Ramos
Task Force Officer
Federal Bureau of Investigations

Sworn to and subscribed before me on June 17, 2019.

Hon. Allison Claire
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

9

## ATTACHMENT A

Description:

The devices to be searched are described as follows:

a.  A silver IPhone with a black case, Model # A1549, and IMEI number: 352013078378723.  This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13A.

b.  A silver and black Moto cell phone with a pink case. This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B.

c.  A white SIM card located between the pink case and silver and black Moto cell phone entered into evidence as item #13-B. This SIM card was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B-1.

## **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C.
§ 922(g)(1) and 18 U.S.C. § 1029, and involve David Anthony MCDANIELS and Anjelika Sherra
Riggins, including:

     a.      All names, words, telephone numbers, email addresses, time / date information,
          messages or electronic data in the memory of the mobile telephone, or on a server
          and associated with the mobile telephone, including:

          i.     Call history (incoming, outgoing, and missed calls);
          ii.    Text messaging history (incoming, outgoing, and drafts);
          iii.   Telephone book (a/k/a "contacts list");
          iv.   Data screen, file, or writing identifying the telephone number
              associated with the mobile telephone searched;
          v.     Data screen, file, or writing containing serial numbers or other
              information to identify the mobile phone searched;
          vi.   Voicemail;
          vii.  Photo gallery;
          viii. User-entered messages (i.e., to-do lists); and
          ix.   Any passwords used to access the electronic data described above.

     b.      Lists of customers and / or suppliers, and related identifying information;

     c.      Types, amounts, and prices of firearms trafficked or possessed, as well as dates,
          places, and amounts related to this criminal activity;

     d.      Any information related to schedules and travel, including geolocation data and
          GPS coordinates stored on the Devices.

     e.      Any information related to bank records, checks, credit card bills, account
          information, or other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things
described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved
usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of
evidence in whatever form and by whatever means they may have been created or stored, including
text messages, voicemail messages or voice notes, any form of computer or electronic storage (such
as flash memory or other media that can store data), videos, and any photographic form.

# # # #

11

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: ) | |
| ) | |
| Three electronic devices processed into evidence in ) | Case No.  2 1 9 - SW _ 0 5 4 6    **AC** |
| connection with Vacaville Police Department, Case No. ) | |
| 18-4246, as further described in Attachment A. ) | |
| ) | |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____EASTERN_____ District of _____CALIFORNIA_____
*(identify the person or describe the property to be searched and give its location)*:

**See Attachment A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See Attachment B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____July 1, 2019_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐    for   30   days *(not to exceed 30)*  ☐   until, the facts justifying, the later specific date of _____.

Date and time issued:    _6/17/19 1:25 pm_                    _____
                                                                                *Judge's signature*

City and state:       Sacramento, California                    Hon. Allison Claire, U.S. Magistrate Judge
                                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                    Date

## ATTACHMENT A

Description:

The devices to be searched are described as follows:

a.  A silver IPhone with a black case, Model # A1549, and IMEI number: 352013078378723. This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13A.

b.  A silver and black Moto cell phone with a pink case. This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B.

c.  A white SIM card located between the pink case and silver and black Moto cell phone entered into evidence as item #13-B. This SIM card was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B-1.

10

**ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 1029, and involve David Anthony MCDANIELS and Anjelika Sherra Riggins, including:

      a.      All names, words, telephone numbers, email addresses, time / date information, messages or electronic data in the memory of the mobile telephone, or on a server and associated with the mobile telephone, including:

            i.      Call history (incoming, outgoing, and missed calls);
            ii.      Text messaging history (incoming, outgoing, and drafts);
            iii.      Telephone book (a/k/a "contacts list");
            iv.      Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
            v.      Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
            vi.      Voicemail;
            vii.      Photo gallery;
            viii.      User-entered messages (i.e., to-do lists); and
            ix.      Any passwords used to access the electronic data described above.

      b.      Lists of customers and / or suppliers, and related identifying information;

      c.      Types, amounts, and prices of firearms trafficked or possessed, as well as dates, places, and amounts related to this criminal activity;

      d.      Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices.

      e.      Any information related to bank records, checks, credit card bills, account information, or other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ⟩<br>⟩<br>Information associated with Facebook user ID ⟩<br>100011985227160 that is stored at premises ⟩<br>controlled by Facebook ⟩<br>⟩ | Case No.    2:21-sw-0126 DB<br><br>**SEALED** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENTS B and C, attached hereto and incorporated by reference.

      **YOU ARE COMMANDED** to execute this warrant on or before _____ March 10, 2021, _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

      Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

      The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for   30   days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ February 24, 2021 10:52 a.m. _____

City and state:      Sacramento, California _____

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                                Date

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100011985227160 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from May 1, 2018, to May 31, 2018;

c)     All photographs and videos uploaded by that user ID and all photographs and videos uploaded by any user that have that user tagged in them from May 1, 2018, to May 31, 2018, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photographs and videos;

d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f)     All other records and contents of communications and messages made or received by the user from May 1, 2018, to May 31, 2018, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

g)     All "check ins" and other location information;

h)     All IP logs, including all records of the IP addresses that logged into the account;

i)     All past and present lists of friends created by the account;

j)     All records of Facebook searches performed by the account from May 1, 2018, to May 31, 2018;

k)      All information about the user's access and use of Facebook Marketplace;

l)      The types of service utilized by the user;

m)      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

n)      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

o)      All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within fourteen days of issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 922(g) involving David Anthony McDaniels, Anjelika Riggins, Lamar Hall, or Sara Sauerwein since May 1, 2018, including, for each user ID identified on Attachment A, information pertaining to the following matters:

a)      The purchase, sale, or transportation of any firearm;

b)      Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c)      Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d)      The identity of the person(s) who created or used the user ID.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, law enforcement may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT C**

AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

JUN 17 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

| In the Matter of the Search of: | ) |
| | ) |
| Three electronic devices processed into evidence in | ) | Case No. 2:19-SW-0546 AC |
| connection with Vacaville Police Department, Case | ) |
| No. 18-4246, as further described in Attachment A. | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |
| 18 U.S.C. § 1029 | Fraud and related activity in connection with access devices |

The application is based on these facts:

**See Affidavit of FBI Task Force Officer Gregory R. Ramos, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gregory R. Ramos, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____June 17, 2019_____

_____
*Judge's signature*

City and state:   Sacramento, California

Hon. Allison Claire, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
## FOR A WARRANT TO SEARCH ELECTRONIC DEVICES

I, Gregory R. Ramos, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of
      Criminal Procedure for a search warrant authorizing the forensic examination of property
      (i.e., the electronic devices further described in Attachment A) which is currently in law
      enforcement possession, and the extraction from that property of the electronically stored
      information (i.e., the data and information further described in Attachment B).

2.    I am an Officer with the California Highway Patrol, and have been so employed for over 13
      years. In April 2018, I was cross-designated as a Task Force Officer with the Federal
      Bureau of Investigation, Sacramento Division, Fairfield Resident Agency. In this role, I
      am responsible for investigating violent crimes and gang-related activity in Solano County
      as a member of the FBI's Solano County Violent Crime Task Force.

3.    Prior to beginning active service as a CHP Officer, I attended the CHP Academy, which is
      a six-month training program with coursework in California criminal law and the
      California vehicle code, investigating traffic collisions, crimes against persons and
      property, and public safety, among other areas. Since that time, I have participated in
      formal training courses that included Interview and Interrogation, Crime Scene
      Investigations, and Gang Investigations, among others. I have earned, Basic, Intermediate,
      and Advanced Certificates from P.O.S.T.

4.    In addition to my classroom training, I have conducted criminal investigations in areas that
      include vehicular homicide, fatal hit and run collisions, assault, burglary, auto burglary,
      vehicle theft, illegal firearms possession, identity theft, and various other crimes. I have
      arrested and interviewed suspects, and interviewed victims and witnesses. During these
      investigations, I frequently worked with experienced local, state and federal law
      enforcement officers. In addition to my classroom training, this practical experience has
      formed the basis of my opinions set forth below.

5.    As a result of my training and experience as a CHP Officer and an FBI Task Force Officer,
      I am familiar with the state and federal laws pertaining to firearms. I know that it is
      unlawful under Title 18 (of the United States Code) for a convicted felon to possess a
      firearm or ammunition.

/ / /

1

6.    The information contained in this Affidavit is based on my review of the reports and files
      in this case, conversations with other law enforcement personnel, and my own personal
      knowledge.

7.    Since this affidavit is intended to show only that there is sufficient probable cause for the
      requested warrant, it does not detail all of my knowledge about this investigation; only that
      which I believe to be pertinent to the authority requested to search the electronic devices
      described below.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

8.    This Affidavit seeks authorization to search two cellular telephones and one SIM card that
      were found in a purse belonging to Anjelika Sherra Riggins, who was arrested along with
      defendant David MCDANIELS on May 22, 2018.  MCDANIELS is the sole defendant in
      *United States v. David Anthony McDaniels*, 2:18-cr-0170-JAM (E.D. Cal.), which charges
      MCDANIELS with violating 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

9.    Riggins' purse was booked into evidence on May 23, 2018, in connection with Vacaville
      Police Department, Case No. 18-4246.  The cell phones and SIM card were discovered
      during a recent inspection of the physical evidence gathered in this case.  The cell phones
      and SIM card are described below:

      a.    A silver IPhone with a black case, Model # A1549, and IMEI number:
            352013078378723.  This device was booked into evidence in Vacaville PD
            Case No. 18-4246, as item #13A.

      b.    A silver and black Moto cell phone with a pink case.  This device was booked
            into evidence in Vacaville PD Case No. 18-4246, as item #13-B.

      c.    A white SIM card located between the pink case and silver and black Moto cell
            phone entered into evidence as item #13-B.  This SIM card was booked into
            evidence in Vacaville PD Case No. 18-4246, as item #13-B-1.

10.   Both cell phones and the SIM card are currently in law enforcement's custody in Vacaville,
      California.

11.   The applied-for warrant would authorize the forensic examination of both cell phones and
      the SIM card to identify electronically-stored data, particularly described in Attachment B.

2

## PROBABLE CAUSE

12.     On May 22, 2018, Vacaville (CA) Police Officer Cole Spencer conducted a traffic stop on
a vehicle for expired registration, a violation of California Vehicle Code 4000(a)(1). The
driver stopped in a Motel 6 parking lot in Vacaville. Officer Spencer identified the driver
as Anjelika Riggins. Police dispatch advised that Riggins was unlicensed and on Solano
County Probation for possession of stolen property with a "search clause" (any authorized
law enforcement officer could search Riggins and property under her control without
needing probable cause or reasonable suspicion for the search beforehand). When asked,
Riggins told Officer Spencer that she was staying in Room 129 at the Motel 6 nearby.
Vacaville Police Officer Criste arrived at the scene to help Officer Spencer search Riggins
and her car. During the searches that followed, the officers found numerous ID cards, debit
cards, and credit cards, all of which were issued in different names, inside Riggins' purse
and wallet. The items located were consistent with identity theft, which was a violation of
Riggins' probation terms (California Penal Code, Sections 530.5(c)(3) 1203.2). Officer
Spencer also found a Motel 6 room key in Riggins purse.

13.     Afterwards, Officer Spencer read Riggins her Miranda rights. She acknowledged that she
understood her rights and agreed to talk further. When Officer Spencer asked about the
numerous credit cards and identification cards he found in her purse, Riggins said that she
used the cards to buy food and cigarettes, and that she bought the cards on the streets in the
Bay Area.

14.     Additional police officers arrived on scene to help with the probation search of Riggins'
motel room, to include Officer Boehm, Officer Gunderson, and Officer Criste. The officers
searched Room 129 using the Motel 6 key card found in Riggins' purse. When the officers
entered the room, several people were inside. They were later identified as David Anthony
MCDANIELS, Lamar Hall, and Sara Sauerwein. When the officers searched the room,
they found multiple items of third-party identifying information consistent with identity
theft. In addition, the officers found a Ruger LC9 9mm pistol in an air vent, both of which
(the gun and the air vent) were wet when the officers searched/found them. The officers
determined that the gun had been possessed by MCDANIELS. This was based on the fact
that MCDANIELS' hands were soaking wet when they interviewed him (and the room's
other two occupants—Lamar Hall and Sara Sauerwein—hands' were dry), and based on
the fact that Hall and Sauerwein had described seeing MCDANIELS put the gun in the vent
when the officers knocked on the door and announced their presence. In addition, the
officers learned that MCDANIELS was wanted for an outstanding felony arrest warrant
issued out of Solano County. Based on this information, as well as the firearm confiscated
from the Motel 6 room, MCDANIELS was arrested.

3

15.   MCDANIELS and Riggins were taken to the Vacaville Police Department.  Both denied
knowing about the firearm and said that Lamar Hall brought it to the motel room to sell
them.  Riggins gave Officer Spencer the password to her IPhone, and she insisted that he
read her Facebook Messenger conversation with Lamar Hall, in which they allegedly
discussed the gun.  Officer Spencer was unable to find any discussion about a gun, or
selling a gun between Riggins and Hall.  He did, however, look through the Facebook
Messenger conversation between Riggins and MCDANIELS from May 20, 2018, and
found a statement from MCDANIELS saying, "I need 450 for a hamma for real so what I
got to do."  Officer Spencer noted that the conversation did not discuss Lamar Hall owning
the firearm, and that, in his view, this message suggested that MCDANIELS wanted to
purchase a firearm prior to the date of his arrest.

16.   The photo below shows the text message exchange between Riggins and MCDANIELS
from Riggins' iPhone:



This screenshot was captured by Officer Spencer.  Riggins' iPhone was booked as evidence
item 13A.  Based on my training and experience I know that "hamma" is a slang term for a
firearm.

4

17.     On August 14, 2018, Task Force Officer Coy Caulfield swore out a criminal complaint in
        *United States v. David Anthony McDaniels*, 2:18-MJ-0154-EFB (E.D. Cal.). Magistrate
        Judge Brennan issued an arrest warrant for David MCDANIELS for the violation of 18
        U.S.C. 922(g)(1) [felon in possession of a firearm] at the same time.

18.     On August 30, 2018, a federal grand jury in the Eastern District of California returned a
        one-count indictment against MCDANIELS, charging him with violations of 18 U.S.C. §§
        922(g)(1) and 924(e)(1). *United States v. David Anthony McDaniels*, 2:18-cr-0170-JAM
        (E.D. Cal.).

19.     On May 17, 2019, Assistant Federal Defender Mia T. Crager, a defense investigator with
        the Federal Defender's Office, Assistant U.S. Attorney Timothy H. Delgado, Task Force
        Officer Mike Miller, and an evidence technician with the Vacaville Police Department
        conducted a review of all evidence that was booked for Vacaville PD Case # 18-4246.
        Inside the purse that was booked as item #13 (Riggins' purse), an IPhone cellular telephone
        and a Moto cellular telephone were located. A SIM card was also found between the Moto
        cellular telephone and its protective case. These three items were booked individually as
        item #13A for the IPhone cellular telephone, item #13-B for the Moto cellular telephone,
        and item #13-B-1 for the SIM card.

20.     Based on my training and experience, and from what I have learned by consulting other
        agents, I know that mobile telephones and/or SIM cards:
        *   preserve in their memory a history of incoming, outgoing, and missed calls;
        *   contain in their memory a telephone book, which allows the user to store numbers
            and other contact information;
        *   contain in their memory text messages sent, received, and drafted by the user;
        *   have a voicemail function that allows callers to leave messages when the user does
            not answer;
        *   contain other user-entered files such as "to-do" lists, which can provide evidence of
            a crime;
        *   contain photographic data files, which can be evidence of criminal activity when the
            user took pictures of evidence of crime.

21.     In addition to these functions, I also know that SIM cards are "smart cards" inside mobile
        telephones, carrying unique identification numbers, which are capable of storing personal
        data and preventing operation if removed.

22.     Mobile telephone companies also store the data described in the above-paragraphs on their
        own servers and associate the data with particular users' mobile telephones. In addition, all

5

of these functions are can be found on a "smart" phone or similar handheld device (such as the devices in Attachment A), as well as evidence of email communications.

23. Because there is probable cause to believe that MCDANIELS possessed the firearm seized on May 22, 2018 in violation of 18 U.S.C. §§ 922(g)(1), and because Officer Spencer found what appeared to be a Facebook Messenger text exchange between Riggins and MCDANIELS from May 20, in which the two of them apparently discussed selling a firearm, I submit there is also probable cause to believe that information and records relating to his possessing the firearm will be found stored on the silver iPhone confiscated from Riggins' purse on May 22, 2018 (i.e., Evidence item #13A). I also submit that there is probable cause to believe that information and records relating to Riggins' potential violations of 18 U.S.C. § 1029 (fraud and related activity in connection with access devices), will be found on all three devices described in Attachment A, and in particular, will contain evidence of the type described in Attachment B.

24. Based on my training and experience as an FBI TFO and a California Highway Patrol Investigator, I know that individuals who illegally possess firearms often take pictures of them with their phones and store them in their phones and are therefore likely to share images of such weapons with others. They also commonly have text messages and other communications in their phones regarding such weapons. I have been involved in several investigations where this was also the case for access device fraud. I believe the cellular telephones and SIM card located in Riggins' purse are likely to have evidence proving MCDANIELS' illegal possession of the firearm seized in this case, as well as Riggins' fraudulent use of access devices.

25. The devices listed in Attachment A are currently maintained at the Vacaville Police Department in Vacaville, California, and have been in law enforcement's custody since they were seized on May 22, 2019. Based on my training and experience, I know the devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into law enforcement's possession.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

27. Wireless telephone: A wireless telephone (or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually

6

contains a "call log," which records the telephone number, date, and time of all calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading form the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

28.     PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and using computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDSs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

29.     Based on my training, experience, and research, I know that the devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, internet access device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who they communicated with, and the content of those communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

31.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

7

32. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

33. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution"' evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

34. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

35. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36. Nature of examination. Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

**CONCLUSION**

38.     Based on the foregoing, I submit that this Affidavit supports probable cause for a search
        warrant authorizing the forensic examination of the devices described in Attachment A, to
        seek the items described in Attachment B.

39.     I declare under penalty of perjury that the statements above are true and correct to the best
        of my knowledge and belief.

                                                                Gregory R. Ramos
                                                                Task Force Officer
                                                                Federal Bureau of Investigations

Sworn to and subscribed before me on June 17, 2019.

Hon. Allison Claire
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

9

## ATTACHMENT A

Description:

The devices to be searched are described as follows:

a.  A silver IPhone with a black case, Model # A1549, and IMEI number:
    352013078378723. This device was booked into evidence in Vacaville PD Case No.
    18-4246, as item #13A.

b.  A silver and black Moto cell phone with a pink case. This device was booked into
    evidence in Vacaville PD Case No. 18-4246, as item #13-B.

c.  A white SIM card located between the pink case and silver and black Moto cell phone
    entered into evidence as item #13-B. This SIM card was booked into evidence in
    Vacaville PD Case No. 18-4246, as item #13-B-1.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 1029, and involve David Anthony MCDANIELS and Anjelika Sherra Riggins, including:

     a.      All names, words, telephone numbers, email addresses, time / date information, messages or electronic data in the memory of the mobile telephone, or on a server and associated with the mobile telephone, including:

          i.      Call history (incoming, outgoing, and missed calls);
          ii.     Text messaging history (incoming, outgoing, and drafts);
          iii.    Telephone book (a/k/a "contacts list");
          iv.     Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
          v.      Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
          vi.     Voicemail;
          vii.    Photo gallery;
          viii.   User-entered messages (i.e., to-do lists); and
          ix.     Any passwords used to access the electronic data described above.

     b.      Lists of customers and / or suppliers, and related identifying information;

     c.      Types, amounts, and prices of firearms trafficked or possessed, as well as dates, places, and amounts related to this criminal activity;

     d.      Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices.

     e.      Any information related to bank records, checks, credit card bills, account information, or other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

11

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: | ) |
| | ) |
| Three electronic devices processed into evidence in | ) |
| connection with Vacaville Police Department, Case No. | ) |
| 18-4246, as further described in Attachment A. | ) |
| | ) |

Case No. 2:19-SW-0546  AC

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ EASTERN _____ District of _____ CALIFORNIA _____
*(identify the person or describe the property to be searched and give its location)*:

**See Attachment A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See Attachment B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 1, 2019 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for   30   days *(not to exceed 30)*   ☐   until, the facts justifying, the later specific date of _____.

Date and time issued:   _6/17/19 1:25 pm_                 _____
                                                          *Judge's signature*

City and state:     Sacramento, California                 Hon. Allison Claire, U.S. Magistrate Judge
                                                          *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                    Date

**ATTACHMENT A**

Description:

The devices to be searched are described as follows:

a.   A silver IPhone with a black case, Model # A1549, and IMEI number: 352013078378723. This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13A.

b.   A silver and black Moto cell phone with a pink case. This device was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B.

c.   A white SIM card located between the pink case and silver and black Moto cell phone entered into evidence as item #13-B. This SIM card was booked into evidence in Vacaville PD Case No. 18-4246, as item #13-B-1.

10

**ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 1029, and involve David Anthony MCDANIELS and Anjelika Sherra Riggins, including:

      a.      All names, words, telephone numbers, email addresses, time / date information, messages or electronic data in the memory of the mobile telephone, or on a server and associated with the mobile telephone, including:

              i.      Call history (incoming, outgoing, and missed calls);
              ii.      Text messaging history (incoming, outgoing, and drafts);
              iii.      Telephone book (a/k/a "contacts list");
              iv.      Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
              v.      Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
              vi.      Voicemail;
              vii.      Photo gallery;
              viii.      User-entered messages (i.e., to-do lists); and
              ix.      Any passwords used to access the electronic data described above.

      b.      Lists of customers and / or suppliers, and related identifying information;

      c.      Types, amounts, and prices of firearms trafficked or possessed, as well as dates, places, and amounts related to this criminal activity;

      d.      Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices.

      e.      Any information related to bank records, checks, credit card bills, account information, or other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

11